WARHOL *v.* HORVATH.

1. MASTER AND SERVANT—CONTRACTS—COMMON COUNTS.
   In action on contract and common counts for services in attempting to sell defendant's patents, finding of no liability *held*, justified, under record.

2. SET-OFF AND RECOUPMENT.
   Amount of plaintiff's note, which defendant indorsed and was later compelled to pay, was properly allowed as offset, together with interest and costs.

3. Same—Delay in Presenting Claim—Gifts.

Where plaintiff waited for nearly six·years, and until after litigation arose, before making claim for certain automobile accessories which he claims to have sold to defendant, but which latter claims was gift to him in appreciation of assistance rendered in helping plaintiff sell another automobile, disallowance of said claim, *held*, not error.

Appeal from Wayne; Chenot (James·E.), J. Submitted January 12, 1932. (Docket No. 75, Calendar No. 36,089.) Decided March 2, 1932.

Assumpsit by John G. Warhol against Geza Horvath on contract for services rendered in selling patent and under the common counts. Set-off by defendant for sums paid on notes for plaintiff. Judgment for defendant on set-off. Plaintiff appeals. Affirmed.

*Thomas A. E. Weadock,* for plaintiff.

*Wiley, Streeter, Smith & Ford* (*Nicholas Solowich,* of counsel), for defendant.

Butzel, J. John G. Warhol, plaintiff, had considerable experience in the automobile business. He was a friend of defendant Geza Horvath, the inventor of a number of patents, including one known as serial No. 1294465, issued February 18, 1919, on his invention of tubing and devices employing it, and machines for making it. Plaintiff represented that he could sell the patent and the machine for making the device, and after much persuasion obtained from defendant the following agreement:

"Exhibit 1.
"Detroit, Michigan, August 4th, 1922.
"I, the undersigned, Geza Horvath of Highland Park, Mich., give and assign to John G. Warhol of

Detroit, the full authority to do business and nego-
tiate its details regarding the sale of my patent,
No. 1,294,465, radiator tubing and machine for same
total price to be $35,000, thirty-five thousand dol-
lars, $15,000 in advance and Bal. 3 months after
delivery of all patents and machine.

"G. HORVATH."

The record fails to disclose what compensation
plaintiff would have been entitled to had he effected
the sale.

Plaintiff went to Chicago, and on the 20th day of
September, 1922, an agreement was drawn which
described plaintiff as well as defendant as owners
of the patent and as parties of the first part and
the Drying Systems, Inc., an Illinois corporation, as
party of the second part. It was signed by Warhol
and second party. It covered the patent and addi-
tional inventions on the tubing and device employ-
ing it and also certain inventions relating to ma-
chines for making and producing the tubing.

Some of the terms of the agreement submitted to
defendant are important. It provided that first
parties were to deliver to second party 60 tubes of
certain specifications embodying the invention cov-
ered by said patent, for which the latter agreed to
pay $1,750 upon the signing of the contract. Second
party reserved the right to test the tubing for 90
days after delivery and to cancel the agreement by
written notice served prior to the expiration of the
90-day period. First parties were obligated to as-
sign the patent and all improvements to a third
party as trustee, who was to record the assignment
and hold it in trust to secure performance of certain
provisions of the agreement. Second party was to
pay $10,000 within five days after the 90-day
period; $5,000 three months thereafter, and the addi-

tional sum of $5,000 upon completion of a successful demonstration of the machine for making the tubing for five eight-hour days. First parties were to build the machine for second party within six months after the payment of the $10,000 and the receipt of a notice from second party to proceed with the agreement. The machine was to consist of a complete unit that would produce perfect brass tubing of the type described in the contract. First parties were to operate the machine for the benefit and instruction of the second party. If the machine were deemed to be unsuccessful, the first parties were to have the opportunity to cure the deficiency, but if they failed to deliver within one year a unit consisting of a machine that could completely make the tubing, then they were to forfeit all right, title, and interest in the patent. In order to make this latter provision effective, first parties were obligated to immediately execute necessary assignments and applications for patents in order to assign to second party a clear title, and the trustee was in the event of forfeiture to transfer to second party all right, title, and interest in the patent; thereupon the patent on radiator tubing and all inventions on the tubing were to become the property of second party, but the machine unit and all moneys paid and all patents and inventions for making the machine were to belong to first parties, subject, however, to the right of second party to build a machine of any suitable type for its own use without further obligation to first parties. The forfeiture clause was intended to secure to second party an adequate return for payments should the machine prove unsuccessful. If, however, the machine proved successful, then first parties were to immediately assign all right, title, and interest in and to the patent, inventions,

machine, etc., to the trustee in trust for the second party, which, thereupon, would be further obligated to pay first parties the additional sum of $55,000 as follows: $10,000 upon delivery, and $1,000 per month until the balance was paid, when the trustee was required to convey to second party absolute title to the patent, inventions, machine, etc. Further provisions of the contract are not pertinent to the issue.

The proposed contract signed by Warhol and the Drying Systems, Inc., together with the latter's check for $1,750, was submitted to defendant. He objected to it and refused to sign. It will be noted that instead of $15,000 being paid in advance on the purchase price of $35,000, as provided by Exhibit 1, only $1,750 was paid on a possible purchase price of $76,750 upon the conditions hereinbefore outlined. The terms did not conform with those of Exhibit 1, even though many of the provisions were details relative to the sale of the patent. The proposed agreement was only an option that might ripen into a contract, if second party did not avail itself of the privilege of cancellation. This right it reserved. The agreement provided for forfeiture and other clauses that defendant found objectionable.

After defendant's refusal to sign, and numerous discussions between himself and plaintiff, a contract somewhat similar in form to the one rejected by defendant was prepared. However, it contained a number of important changes. It provided that first parties should have eight months in which to complete a unit, and a longer time in the event of sickness, fire, strikes, etc. The forfeiture clause as well as other provisions were changed. The new draft of contract was signed by both plaintiff and

defendant and forwarded to Drying Systems, Inc., which refused to proceed any further, owing to the fact that it had lost its contracts with two large customers. Upon defendant's refusal to pay for plaintiff's services, the latter brought the instant suit, in which he claimed compensation for his services under Exhibit 1, and also for attempting to sell defendant's patents on a chain and on fin tubing. He declared on the contract (Exhibit 1) as well as on the common counts. It will serve no useful purpose to set forth the testimony in detail. The case was tried without a jury. Plaintiff and defendant, the only witnesses, gave conflicting testimony. The trial judge had the opportunity of seeing the witnesses and hearing their testimony. He also took into consideration Exhibit 1 and the proposed agreement. He found no liability on the part of defendant. We agree with his conclusions.

Defendant filed a notice of set-off based upon a note of $250 given by plaintiff to the Highland Park State Bank and indorsed by defendant, and on nonpayment charged by the bank against defendant's bank account. Plaintiff claimed an offset of $145 for auto accessories, including a clock and cover for a car that plaintiff had sold to defendant in 1922. The latter claimed that the articles were given him in appreciation for his assistance in assisting plaintiff in the sale of an additional car. It is significant that no charge was made for accessories until 1928, when the present suit was begun. A judgment was rendered against plaintiff in favor of defendant for $355.20, the amount due on the note, with interest, and costs. We find no error in this holding.

The judgment is affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.